UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TJGEM LLC,

        Plaintiff,

v.

REPUBLIC OF GHANA, *et al.*

        Defendants.

Civil Action No. 13-382 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff in this matter, TJGEM LLC, was not awarded an anticipated $595,000,000 no-bid contract to reconstruct the sewer system in Accra, the capital city of the Republic of Ghana ("Ghana"). *See* Pl.'s First Am. Compl. ("FAC") ¶ 258. After the contract was awarded to a competing company, the plaintiff brought the instant suit against Ghana, the Accra Metropolitan Assembly (the "AMA"), and two Ghanaian government officials, Kwabena Duffuor and Alfred O. Vanderpuije (collectively, the "Ghana Defendants"); the firm that obtained the contract, Conti Group ("Defendant Conti"); the subcontractor for the sewer project, Kwame Building Group and two of its employees, Anthony T. Thompson and Craig Lucas (collectively, the "KBG Defendants"); and three brothers, Gideon, Mark, and Jonathan Adjetey (collectively, the "Adjetey Defendants"), who were founding members of TJGEM.[1] *See* FAC Part I.B ¶¶ 1–9.

Pending before the Court are eight motions related to three groups of defendants: the Defendant Conti's Motion to Dismiss ("Conti MTD"), ECF No. 40 and the plaintiff's Motion to Strike Defendant Conti's Motion to Dismiss, ECF No. 42; the Ghana Defendants' Motion to

---

[1] The plaintiff apparently derives its moniker from the first initials of the five founding members: Tony Weaver, Jonathan Adjetey, Gideon Adjetey, Elbert Walton, and Mark Adjetey.

1

Dismiss ("Ghana Defs.' MTD"), ECF No. 51, and the plaintiff's Motion to Strike the Declarations filed with the Ghana Defs.' MTD, ECF No. 62; the plaintiff's Amended Motion to Stay, ECF No. 83; the KBG Defendants' Motion to Dismiss ("KBG Defs.' MTD"), ECF No. 53, and Motion to Join the Other Defendants' Oppositions to the plaintiff's Motion for Stay, ECF No. 92; and the plaintiff's Motion for Sanctions Against Defendant Vanderpuije, his defense counsel, Creighton R. Magid and Juan C. Basombrio, and Dorsey & Whitney, Defendant Vanderpuije's defense counsel's law firm ("Pl.'s Sanctions Mot."), ECF No. 89. As explained below, the Court grants the Ghana Defendants' Motion to Dismiss, denies the plaintiff's Motion to Strike the Ghana Defendants' declarations and, consequently, dismisses this action in its entirety, rendering all but one of the remaining motions moot. That remaining motion, the plaintiff's Motion for Sanctions, is denied.

I. BACKGROUND

The plaintiff's FAC is a 216 page, rambling document containing numerous allegations of corruption and bribery in Ghana accompanied by 479 pages of exhibits, that, at the very least, tests the limits of Federal Rule of Civil Procedure 8(a)(2)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* FAC; Pl.'s Errata, Exhibit List with Exhibits to FAC ("Pl.'s Exhibits"), ECF No. 31, *generally*. In order to address the Ghana Defendants' jurisdictional argument, which dooms the plaintiff's claims, a brief recitation of the pertinent facts from the FAC is necessary.

In 2010, Defendants Vanderpuije and Gideon Adjetey ("Gideon"), who were longtime friends, discussed "potential infrastructure development projects" in Ghana "that might be awarded to a company with whom Gideon might be affiliated or hold an interest." FAC ¶¶ 5;

2

11.[2] Defendant Vanderpuije is the Metropolitan Chief Executive of the Accra Metropolitan District, a position akin to an appointed Mayor in the United States. *Id.* ¶ 4; Pl's Mem. Opp'n Ghana Defs.' MTD ("Pl's Opp'n") at 14, ECF No. 63. Following the visit, Gideon contacted Elbert Walton ("Walton"), an attorney in St. Louis, Missouri, with a proposal to form a partnership to pursue such infrastructure projects. FAC ¶ 15. Walton suggested involving another partner, Anthony Weaver ("Weaver"), and Gideon assented. *Id.* ¶¶ 17–19. In January 2011, Walton and Weaver "organized a limited liability company, TJGEM, LLC in the state of Missouri as an infrastructure development company." *Id.* ¶ 40. The three Adjetey Defendants, Gideon, Mark, and Jonathan, were to "make both a financial investment in the company and sign the operating agreement as members of the company and to jointly manage the company with Walton and Weaver." *Id.* ¶ 42.

Over the next fourteen months, from January, 2011 through March, 2012, the plaintiff pursued a contract with the Ghanaian government to reconstruct the Accra sewer system, working closely with Defendant Vanderpuije. *See id.* ¶¶ 44–258. As part of these negotiations, the plaintiff's members and agents flew to Ghana on multiple occasions. *See id.* ¶¶ 44; 77; 168. During the negotiations, the plaintiff concedes it learned that "only the central government could contract for and finance the Accra sewer system project" and "under Ghana's constitution and statutes, the central government borrows funds and the central government by and through its cabinet level members enter [sic] into such contracts, subject to the approval of financing by parliament." *Id.* ¶ 148; *see also* Pl's Opp'n at 10, (acknowledging Defendant Vanderpuije "misrepresented the AMA's authority in that the AMA did not have the power to enter into the sewer reconstruction contract and thus no contract was adopted by the AMA").

---

[2] Unless noted otherwise, paragraph citations refer to those paragraphs in Section IV of the FAC.

Despite this concession, the plaintiff alleges that it was induced into providing Defendant Vanderpuije with contracts and a business plan that it characterizes as "trade secrets" based on Defendant Vanderpuije's assurances that "TJGEM would be granted a contract as the developer for the construction or reconstruction of the sewer system of Accra." *See* FAC ¶¶ 98–102. The plaintiff notes that it provided the documents it classifies as "trade secrets" voluntarily to, *inter alia*, (1) Defendant Vanderpuije, *id.* ¶ 79; (2) "his staff of engineers, city manager, and city attorney[,]" *id.* ¶ 80; (3) the subcontractor retained for the project, Defendant KBG, *see id.* ¶ 89; (4) United States embassy personnel in Ghana, *id.* ¶164; (5) Ghana's Minister of Finance, Defendant Duffuor, *id.* ¶ 233; and (6) the commercial officer in the Ghanaian Embassy in Washington, D.C., *id.* ¶ 241. The plaintiff concedes that it did not submit a confidentiality agreement to Defendant Vanderpuije "in reliance on [Defendant] Gideon's representations as to the good faith and fairness of [Defendant Vanderpuije] and the need under Ghanaian custom to show trust in [Defendant Vanderpuije.]" *Id.* ¶ 86. The plaintiff does not plead that it ever asked anyone associated with the project to sign a confidentiality agreement. *See id.*, *generally*. A similar failure to obtain a signed confidentiality agreement with Defendant Vanderpuije scuttled an earlier attempt to work with "a New York based company, KPP," during the formation of TJGEM, *see id.* ¶¶ 30–35, and a loan broker the plaintiff discussed doing business with in Ghana, *id.* ¶ 110.

In pursuing the project, the plaintiff met with several Ghana government officials and sought financing from the Export-Import Bank of the United States for Ghana to fund the reconstruction. *See id.* ¶¶ 170–79; 201. The plaintiff alleges it was able to secure a loan from the Export-Import Bank for Ghana in the amount "of $587,937,500 to finance the sewer project

4

upon Ghana entering into a contract with TJGEM as developer of the project and [Defendant] KBG as subcontractor to TJGEM on the project." *Id.* ¶¶ 206; 223.

The plaintiff alleges that after it refused several requests for a bribe from Defendant Vanderpuije, *see id.* ¶¶ 114; 120; 129; 140; 191; 245–47, the Ghana Defendants sought and obtained a $10 million bribe from Defendant Conti to award the contract for the sewer project to Defendant Conti, *id.* ¶ 257. The plaintiff alleges that, based in part on the work the plaintiff had done, the Ghana Defendants awarded the project to Defendant Conti and signed a memorandum of understanding to that effect on March 9, 2012. *Id.* ¶ 258. Defendant Vanderpuije was a signatory on the contract between Defendant Ghana and Defendant Conti. Pl.'s Opp'n at 14. The plaintiff alleges that this amounted to a failure to follow Ghanaian law in procurement of government contracts and was only possible because of the alleged bribe. *See id.* ¶¶ 281–90.[3]

The plaintiff filed the instant suit on March 22, 2013, *see* Compl., ECF No. 1, and amended its complaint on July 24, 2013, *see* FAC. The FAC asserts seven claims for relief: (1) "Misappropriation and Conversion of Trade Secrets" against all defendants; (2) Tortious Interference with a Business Relationship against the Adjetey Defendants; (3) Tortious Interference with a Business Relationship against the KBG Defendants; (4) Tortious Interference with a Business Relationship against Defendant Conti; (5) RICO and Hobbs Act Violations against all defendants; (6) common law fraud against Defendant Vanderpuije and Defendant Duffuor; and (7) conspiracy to defraud against all defendants. *See id.* Part V ¶¶ 292–603. The

---

[3] The plaintiff also accuses a commercial officer in the United States Embassy in Accra of steering the sewer project contract to Defendant Conti solely because the officer "is a European-American," FAC ¶ 270, and Defendant "Conti was European-American owned and managed," *id.* ¶ 277. The plaintiff states the officer's "apprising [Defendant] Conti of [the plaintiff's] proposal to redevelop the sewer system of Accra was racially motivated and/or had a racially discriminatory effect." *Id.* ¶ 278. It is unclear what relevance these conclusory allegations have to the instant matter, considering that the officer is not a named defendant and none of the plaintiff's claims for relief are based upon discriminatory animus.

5

plaintiff seeks from all defendants approximately $425 million in compensatory and punitive damages. *See id.* Part VI ¶¶ 1–9.

On the misappropriation claim, the plaintiff included in its list of exhibits attached to the pleading and filed on the public docket in this case, the documents it alleges to be the "trade secret" documents. *See id.* ¶ 301 (referencing Exhibits 1 and 9). The Ghana Defendants, Defendant Conti, and the KBG Defendants have moved to dismiss this action on numerous grounds. *See* Ghana Defs.' MTD; Conti MTD; KBG MTD, *generally*. The plaintiff's Motion for Sanctions against Defendant Vanderpuije and his attorneys is based upon exhibits attached to the declaration provided by Defendant Vanderpuije in support of the Ghana Defendants' Motion to Dismiss. *See* Pl.' Sanctions Mot., *generally*.

## II.    LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, Federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC,* 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must establish the court's jurisdiction over the subject matter by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Bolden-Bey v. U.S.*

*Parole Comm'n*, 731 F. Supp. 2d 11, 13 (D.D.C. 2010) ("On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction"). When considering a motion under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal citations and quotation marks omitted). The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating subject-matter jurisdiction, the court, when necessary, may look beyond the complaint to "undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert*, 974 F.2d at 197; *see also Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005).

## III. DISCUSSION

The Ghana Defendants assert two primary arguments for dismissal that are interrelated and, ultimately, dispositive. First, they assert that Ghana and the AMA are foreign sovereigns under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*, which deprives United States courts of subject matter jurisdiction over claims against them. *See* Ghana Defs.' MTD at 1, ECF No. 51. Based on their assertion of sovereign immunity, the Ghana Defendants argue that this action should be dismissed in its entirety, against all defendants, under the doctrine articulated in *Philippines v. Pimentel*, 553 U.S. 851, 867 (2008) ("*Pimentel*"). *See id. Pimentel* holds that "[a] case may not proceed when a required-entity sovereign is not

7

amenable to suit." *Pimentel*, 553 U.S. at 867. Thus, the Court must first determine if the FSIA applies to the Ghana Defendants and, if so, whether the foreign sovereigns are required-entities such that this case may not proceed.

### A. The FSIA's Application To The Ghana Defendants

The FSIA states that "a foreign state shall be immune from the jurisdiction of the courts of the United States" except in the case of three exceptions delineated in the FSIA. 28 U.S.C. § 1604; *Samantar v. Yousuf*, 560 U.S. 305, 313–14 (2010); *see Van Beneden v. Al-Sansui*, 709 F.3d 1165, 1166 (D.C. Cir. 2013) (noting the FSIA "protects foreign sovereigns from suit in the United States unless Congress specifically provides otherwise."). A "foreign state" for the purposes of the FSIA includes "an agency or instrumentality of a foreign state . . . which is an organ of a foreign state or political subdivision thereof." 28 U.S.C. § 1603(a–b). None of the parties to this action dispute that Ghana and the AMA are "foreign states" for the purposes of the FSIA. *See, e.g.*, FAC Part I.B ¶¶ 1–2 ("Defendant Republic of Ghana (Ghana) is a sovereign foreign state[;]" and "Defendant Accra Metropolitan Assembly is a political subdivision of the Republic of Ghana"); Ghana Defs.' Mem. Supp Mot. Dismiss ("Ghana Defs.' Mem.") at 9, ECF No. 51-1 (asserting the Republic of Ghana and the AMA are "foreign states"); Decl. of Prof. Kofi Quashigah, Dean of the Law Faculty, University of Ghana ("Quashigah Decl.") ¶¶ 2; 12, ECF No. 51-7 (stating that the "Republic of Ghana is a sovereign state" and the AMA "is an organ of the Republic of Ghana, established by the Ghanaian Constitution.").[4] A foreign state is

---

[4] The plaintiff has moved to strike the declarations submitted by the Ghana Defendants in support of their Motion to Dismiss. Pl.'s Mot. Strike Decls. & Docs. Or Exs. Attach. Supp. Ghana Defs.' Mot. Dismiss Pl.'s First Am. Compl. ("Pl.'s Mot. Strike") at 3, ECF No. 62. The plaintiff argues that such declarations are improper for the Court to consider under Federal Rule of Civil Procedure 12(d). Pl.'s Mem. Supp. Mot. Strike at 5, ECF No. 62-1. The plaintiff is incorrect. Since the Ghana Defendants are challenging the subject matter jurisdiction of the Court under Federal Rule of Civil Procedure 12(b)(1), the Court may properly "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003);

8

"presumptively immune from the jurisdiction of United States courts[,] unless a specific exception applies." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296, 299 (D.C. Cir. 2005). This presumption of immunity "is overcome only if the plaintiff shows that one of the exceptions to immunity provided in 28 U.S.C. §§ 1605–07 applies." *TMR Energy Ltd.*, 411 F.3d at 299.

The plaintiff argues that the so-called "commercial activity" exception to the FSIA, 28 U.S.C. § 1605(a)(2), applies to this matter. Pl.'s Opp'n at 14–16. That exception states that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). As legal support for its contention that this exception applies, the plaintiff merely cites a passage from *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992), which held that "when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." Pl.'s Opp'n at 15. As factual support for its contention that the commercial activity exception applies, the plaintiff offers thirteen "facts," many of which are legal conclusions that need not be accepted as true, *see Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012), and none of which support the plaintiff's contention.

---

*Gammill v. U.S. Dep't of Educ.*, No. 11-409, 2013 WL 6053544, at *1, n.1 (Nov. 18, 2013) (same). Therefore, the plaintiff's Motion to Strike is denied as to the declarations pertaining to the Ghana Defendants' 12(b)(1) motion.

At the outset, the plaintiff has not offered any affidavits or evidence, as required under the burden shifting framework of the FSIA, to disprove the presumption. *See Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013) ("[T]he FSIA begins with a presumption of immunity, [under] which the plaintiff bears the initial burden to overcome by producing evidence that an exception applies, and once shown, the sovereign bears the ultimate burden of persuasion to show the exception does not apply."). Instead, the plaintiff asserts, *inter alia*, that the construction loan at issue "has to be repaid in Washington, D.C.[;]" certain monies from the loan have been earmarked "to pay the bribe fee" allegedly demanded by the Ghana Defendants; the source of the loan funds is the United States Export-Import Bank, which "is subject to the Foreign Corrupt Practices Act (FCPA)[;]" Defendant Vanderpuije and the Defendant Conti "are US [sic] citizens coming within the FCPA[;]" extortion is a predicate act under the civil RICO statute; the Export-Import Bank "has an interest in enforcing US [sic] law[;]" and that United States courts "have jurisdiction to enforce US [sic] law and Ex[port]-Im[port] Banks [sic] rules and regulations." Pl.'s Opp'n at 15–16. In essence, the plaintiff argues that because the sewer reconstruction project was to be paid for by a loan from the Export-Import Bank of the United States, Ghana must be engaging in commercial activity. *See id.* at 16 (plaintiff posing rhetorical question: "If that does not comprise commercial activity by [Ghana] or [the] AMA in the USA. [sic], as well as outside of the USA with a direct effect in the USA, what does?"). To the extent these statements are "facts" and not legal conclusions, they do not help the plaintiff's case.

Although "loans, guarantees or insurance provided by the Export-Import Bank of the United States" can be grounds for the application of the commercial activity exception, *see Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1513 (D.C. Cir. 1988) (quoting H.R. Rep.

No. 1487, 94th Cong., 2d Sess. 17 (1976)), the plaintiff points out that it is not challenging validity of the sewer reconstruction contract or the memorandum of understanding that led to the Export-Import Bank loan. *See* Pl.'s Opp'n at 17. Rather, the plaintiff is challenging the allegedly tortious conduct that occurred in Ghana, i.e., the alleged extortion and misappropriation. *See id.* The commercial exception to the FSIA applies only when the "domestic commercial activity constitutes an 'element[] of a claim that . . . would entitle [the plaintiff] to relief under [its] theory of the case.'" *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1146 (D.C. Cir. 1994) (quoting *Saudi Arabia*, 507 U.S. at 356). None of the "facts" relied upon by the plaintiff form the elements of the claims for relief the plaintiff is asserting, since, as the plaintiff concedes, the grant of the Export-Import Bank loan is completely unrelated to the letting of the contract itself and the alleged extortion surrounding the awarding of the contract. Thus, the "alleged commercial activities have absolutely no connection with the events underlying [the plaintiff's] claims against" Ghana and the AMA. *See Peterson v. Islamic Republic of Iran*, 563 F. Supp. 2d 268, 273 (D.D.C. 2008).

The FAC alleges that, in Ghana, Defendant Vanderpuije sought bribes from the plaintiff in return for a no-bid contract to rebuild Accra's sewer system and, when the plaintiff refused to pay the bribes, this defendant misappropriated the plaintiff's allegedly proprietary trade secrets and awarded the contract to Defendant Conti, allegedly because Defendant Conti was willing to pay the requested bribe. *See* FAC, *generally*. The plaintiff asserts its legal claims against all of the Ghana Defendants based upon the alleged actions of the single Ghanaian official, Defendant Vanderpuije, but this assertion fails. As the Ghana Defendants point out, in order to fall within the commercial activity exception, the commercial activity must be "by the foreign state." *See* 28 U.S.C. § 1605(a)(2). Under Ghanaian law, Defendant Vanderpuije lacked the authority to

11

award a no-bid contract since all government contracts require approvals under "the 1992 Ghanaian Constitution, the Procurement Act, the Local Government Act, and the Environmental Protection Agency Act." Quashigah Decl. ¶ 17. Although the plaintiff offers the conclusory statement that Defendant "Vanderpuije did in fact or *de facto* choose the company that was awarded the NO-BID contract for reconstruction of the sewer system," Pl.'s Opp'n at 14, it specifically concedes that "only the central government could contract for and finance the Accra sewer system project" and "under Ghana's constitution and statutes, the central government borrows funds and the central government by and through its cabinet level members enter [sic] into such contracts, subject to the approval of financing by parliament." FAC ¶ 148. This concession is ultimately fatal to the plaintiff's attempt to shoehorn the Ghana Defendants' actions into the commercial activity exception.[5]

The plaintiff fails to address the holding in *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 308 (9th Cir. 1997)—which is relied upon by the Ghana Defendants, *see* Ghana Defs.' Mem. at 10–11—that when "the foreign state has not empowered its agent to act, the agent's unauthorized act cannot be attributed to the foreign state; there is no 'activity of the foreign state.'" The *Phaneuf* court specifically rejected the argument that apparent, or *de facto*, authority was enough to trigger the commercial activity exception, finding that "Congress intended for the exception to apply only in cases of actual authority." *Id.* Since the actions of Defendant Vanderpuije are the crux of all of the plaintiff's claims, and the plaintiff admits that Defendant Vanderpuije did not have actual authority to award the contract at issue, those claims, even if

---

[5] The plaintiff also implicitly argues that Defendant Vanderpuije's signature on the ultimate contract is somehow relevant to his *de facto* power to award the contract and, consequently, to the application of the commercial exception. *See* Pl.'s Opp'n at 14. It is black-letter law that "[a]n agent may bind the principal to a contract if the agent entered into a contract while acting within the scope of his or her actual authority." *See, e.g.*, *Uhar & Co., Inc. v. Jacob*, 840 F. Supp. 2d 287, 291 (D.D.C. 2012); *see also* RESTATEMENT (THIRD) OF AGENCY § 6.01, cmt. b. Here, there is no dispute that Defendant Vanderpuije did not have "actual authority" to enter into a binding contract on behalf of Ghana. Thus, his signature on the contract is of no import.

assumed to be true, cannot be attributed to Ghana or the AMA. Thus, the plaintiff has failed, at the outset, to meet its burden of showing the commercial activity exception applies since it admits that the actions undertaken by Defendant Vanderpuije were not of or by a foreign state.[6]

Moreover, even assuming to be true the allegations that the awarding of the contract to Defendant Conti was due to corruption and payment of a bribe, the plaintiff has failed to show the requisite "direct effect" in the United States sufficient to bring the Ghana defendants' actions within the commercial activity exception. As the D.C. Circuit has noted, "[i]f a loss to an American individual and firm resulting from a foreign tort were sufficient standing alone to satisfy the direct effect requirement, the commercial activity exception would in large party eviscerate the FSIA's provision of immunity for foreign states." *Bell Helicopter Textron, Inc.*, 734 F.3d at 1184 (quoting *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993)) (alteration in original). The plaintiff has offered no rationale as to why the alleged misappropriation or any other tortious activity by the Ghana Defendants has had any "direct effect" in the United States beyond an alleged loss to "an American individual and firm," which in this case is the plaintiff. The only colorable "fact" the plaintiff offers for this "direct effect" analysis is an allegation that several Ghanaian officials travelled to the United States on one occasion to visit the Export-Import Bank in Washington, D.C., in conjunction with Defendant Conti, to discuss the loan for the project. *See* Pl.'s Opp'n at 15. The mere fact that some Ghanaian officials travelled to the United States as part of negotiations regarding the sewer project at issue is simply not enough to trigger the application of the commercial activity

---

[6] Although the plaintiff does not elaborate on which of the three clauses contained in the commercial activity exception applies, *see* Pl.'s Opp'n at 14–16, this opaqueness is immaterial because all three clauses require "commercial activity . . . by the foreign state" or "commercial activity of the foreign state," 28 U.S.C. § 1605(a)(2). Considering that the plaintiff has made no allegations that Ghana or the AMA, acting through authorized agents with actual authority, committed any of the acts that gave rise to the plaintiff's claims for relief, the exception cannot apply.

13

exception. *See, e.g.*, *Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1109 (D.C. Cir. 1982) (finding two meetings by foreign officials regarding contract for services with U.S. enterprise in United States too "transitory and insubstantial" to trigger commercial activity exception). In any event, the plaintiff's claims, as noted, do not arise from the loan but instead from the alleged actions of a single Ghanaian government official. Specifically, the plaintiff has alleged that a Ghanaian government official sought a bribe from the plaintiff, the plaintiff declined, and the plaintiff did not receive a contract for an infrastructure project paid for by Ghana to be completed in Accra. This falls woefully short of the requisite showing that a foreign state engaged in commercial activity having a direct effect in the United States, which is necessary to overcome the FSIA's presumption of immunity.[7]

In short, the plaintiff has failed to meet its burden of showing that a FSIA exception applies and, consequently, has failed to overcome the presumption of sovereign immunity that cloaks Ghana and the AMA.[8] Thus, the Court has no subject matter jurisdiction over the claims[9] against Ghana or the AMA.[10]

---

[7] To the extent that the plaintiff presents responsive arguments to the Ghana Defendants' Motion to Dismiss in its briefing related to unrelated motions, such arguments are untimely and not properly before the Court. *See* Pl.'s Reply Mem. to Ghana Defs.'Opp'n to Pl.'s Am. Mot. to Stay, Suspend and to Hold Case in Abeyance and to Fix Deadline to File Mot. for Leave to Amend Compl. ("Pl.'s Am. Stay Reply") at 4–18, ECF No. 93. New arguments, raised for the first time in a reply brief to an unrelated motion, were not timely filed in response to the Ghana Defendants' Motion to Dismiss, *see* LCvR 7(b), as they were filed seventy-six days after the Ghana Defendants' Motion to Dismiss and after briefing on that motion had closed. *See* Ghana Defs.' MTD (dated September 6, 2013); Pl.'s Opp'n (dated October 7, 2013); Ghana Defs.' Reply to Pl.'s Opp'n to Defs.' MTD, ECF No. 67 (dated October 17, 2013); Pl.'s Am. Stay Reply (dated November 21, 2013). In any event, even if the arguments were timely presented and the plaintiff had sought leave to file a sur-reply, consideration of the new arguments would make no difference in the Court's analysis since the plaintiff still admits that its claims are based on the alleged misrepresentations and actions of Defendant Vanderpuije, which cannot be attributed to Defendant Ghana or Defendant AMA. *See* Part III.A, *supra*; Pl.'s Am. Stay Reply at 4–16.

[8] The Ghana Defendants also argue that this matter should be dismissed as to Ghana and the AMA under the "act of state doctrine." Ghana Defs.' Mem at 20–21. This Circuit has noted the "strong similarity between this doctrine and the FSIA," but since the FSIA acts to limit subject matter jurisdiction over a federal court's adjudication of a matter involving foreign states, a jurisdictional challenge under the FSIA must be evaluated and resolved before considering the act of state doctrine. *See Millen Indus., Inc. v. Coordination Council for N. Am. Affairs*, 855 F.2d 879, 881–82 (D.C. Cir. 1988). Here, since the Court lacks jurisdiction over the Ghana Defendants pursuant to the FSIA, it consequently does not have the power to invoke the act of state doctrine. *See id.*

### B.     The Ghana Defendants Are Required-Entities Under *Pimentel*

The Ghana Defendants assert that, under *Pimentel*, this matter must be dismissed in its entirety, a view shared by the Defendant Conti. *See* Ghana Defs.' Mem. at 18; Conti MTD at 1, n.2, ECF No. 40. The plaintiff does not respond to this argument in its opposition to the Ghana Defendants' motion. *See* Pl.'s Opp'n, *generally*; Ghana Defs.' Reply to Pl.'s Opp'n to Defs.' MTD ("Ghana Defs.' Reply") at 9–10, ECF No. 67. Thus, the Court "may treat the plaintiff's failure to oppose the defendant[s'] . . . arguments as a decision to concede those arguments." *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 268 (D.D.C. 2012) (citing *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997))). Even if the plaintiff had not conceded this point, however, the Ghana Defendants are correct in arguing that *Pimentel* bars further consideration of this matter.

In *Pimentel*, the Supreme Court held that, when parties to a suit possess sovereign immunity and are required parties under Federal Rule of Civil Procedure 19, "dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign." *Pimentel*, 553 U.S. at 867. In the instant matter, the plaintiff's claims are, at base, those of a disappointed bidder that failed to win a contract with a foreign government. *See* Pl.'s Opp'n at 17 ("What is being requested is for a jury to decide whether . . . the Conti-Ghana

---

[9] Notably, even if the Court had jurisdiction over this matter, the plaintiff likely has destroyed its own misappropriation claim by filing un-redacted, complete versions of the documents it alleges were trade secrets, particularly Exhibits 1 and 9, Pl.'s Exhibits at 1–72; 94–195, on the public docket in this matter. *See Littlejohn v. Bic Corp.*, 851 F.2d 673, 680 (3d Cir. 1988) ("It is well established that the release of information in open court 'is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use.'") (quoting *Nat'l Polymer Prods. v. Borg-Warner Corp.*, 641 F.2d 418, 421 (6th Cir. 1981)). Additionally, the plaintiff made no effort to secure confidentiality agreements before dissemination of the documents containing purported trade secrets, thereby calling into question whether the plaintiff established the requisite "reasonable efforts to safeguard [their] secrecy," *Armenian Assembly of America, Inc. v. Cafesjian*, 692 F. Supp. 2d 20, 43 (D.D.C. 2010), especially in light of the multiple parties to which it disclosed the allegedly secret information, *see* Part I, *supra*.

[10] Since the Court finds it has no subject matter jurisdiction over claims involving Ghana and the AMA, it is unnecessary to address the Ghana Defendants' other arguments, including their motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

contract was procured by [Defendant] Conti promising to pay [Defendant] Vanderpuije a bribe, as a predicate act under Plaintiff's RICO conspiracy and enterprise claim."). Thus, the plaintiff is asking for an examination of the reasons for, and propriety of, a foreign sovereign's decision to award a contract for a construction project in a foreign state.[11] Such an examination is prohibited by *Pimentel*.

"There is a comity interest in allowing a foreign state to use its own courts for a dispute if it has a right to do so." *Pimentel*, 553 U.S. at 866. In the instant matter, the sovereign defendants, Ghana and the AMA, have a legitimate interest in "events of . . . political significance for the Republic and its people." *Id.* The proposed project would, as the plaintiff notes, "alleviate the flooding problem [in Accra] with the attendant savings of hundreds of lives and millions of dollars in property." Pl.'s Opp'n at 10; *see also* Decl. of Major Mahama Samuel Tara, Chief Director, Ministry of Finance of the Republic of Ghana ("Tara Decl.") ¶ 7, ECF No. 51-6 ("[T]his is a matter of significant importance to the people of Ghana. The subject dispute relates to a project for improvements to infrastructure in Ghana and, as such, it is a matter of local significance."). Additionally, the plaintiff has alleged that a major Ghanaian official, Defendant Vanderpuije, engaged in corrupt practices. *See, e.g.*, Pl.'s Opp'n at 11. Resolving such matters of substantial domestic and political significance falls squarely within the types of interests held by the Ghana Defendants that could be compromised by adjudication of this suit in

---

[11] Although not necessary to resolve the plaintiff's claim, the Ghana Defendants make plain the basis for the selection of Defendant Conti instead of the plaintiff to construct the project. As the Ghana Defendants note, the plaintiff was created solely to attempt to "pursue the subject project," whereas Conti "is an established company with extensive experience in" infrastructure development and came "highly recommended by officials of the United States Embassy in Accra." Decl. of Samuel Nana Ayeh-Datey, Coordinating Director, AMA ("Ayeh-Datey Decl.") ¶ 9, ECF No. 51-8. Indeed, the plaintiff appears to backpedal about its planned role in the project, stating in its opposition that the plaintiff was merely a "developer" that "was to marshal the resources requisite to completion of the sewer project." Pl.'s Opp'n at 7. This is difficult to reconcile with the plaintiff's characterization of the KBG Defendants in its FAC as "subcontractors," clearly implying that the plaintiff intended to be the "prime" construction contractor on the project. *See, e.g.*, FAC ¶ 74 ("KBG would be identified . . . as the subcontractor to [the plaintiff] providing project and program construction management services on the" project.).

the United States. *See Pimentel*, 553 U.S. at 869 (finding claims based on alleged public corruption to implicate "important comity concerns" to which courts must "accord proper weight to the compelling claim of sovereign immunity.").

Since the sovereign defendants have a significant "interest relating to the subject of the action" and "disposing of the action in the [sovereign defendants'] absence may . . . impede the [sovereign defendants'] ability to protect the[ir] interest," the sovereign defendants are required parties under Federal Rule of Civil Procedure 19(a)(1)(B). *Pimentel* holds unambiguously that in such a situation, where a sovereign is a required party for the purposes of Rule 19, the case must be dismissed. *See Pimentel*, 553 U.S. at 867.

Consequently, since principles of comity, as articulated in *Pimentel*, militate strongly against resolution of this matter in this Court due to the significant risk of implicating, and possibly injuring, the sovereign entities' interests, the Court finds that, even if this argument were not conceded by the plaintiff, dismissal of this action in its entirety would be required.[12]

### C. The Plaintiff's Rule 11 Sanctions Motion

The FSIA and *Pimentel* resolve or render moot all motions pending in this suit, save for the plaintiff's motion for sanctions against Defendant Vanderpuije and his lawyers. *See* Pl.'s Sanctions Mot., *generally*. In its motion for sanctions, the plaintiff alleges that two emails attached to Defendant Vanderpuije's declaration were "fraudulent and forged." *Id.* at 1. The two emails were "purported to be authentic emails" from Adjetey Defendants Gideon and Mark "asserting that [Defendant] Vanderpuije had not solicited a bribe." Pl.'s Mem. Supp. Sanctions

---

[12] Although no motion to amend the complaint a second time has been filed, the plaintiff has indicated it plans to seek leave to amend its Complaint again to address the shortcomings pointed out in the defendants' briefing. *See, e.g.*, Pl.'s Am. Mot. Stay ¶ 3. Since the nexus of this suit is the propriety of the sovereign entities' awarding of the sewer contract to Defendant Conti, *see* Pl.'s Opp'n at 17, any amendment contemplated by the plaintiff could not overcome the comity concerns articulated by the sovereign defendants. The Court makes this evaluation in light of the plaintiff's Amended Complaint, which exhaustively detailed, in 216 pages, the plaintiff's factual and legal claims, and in "aggregate some One Thousand (1,000) pages or more" of briefing submitted in connection with the multiple pending motions. Pl.'s Am. Mot. Stay ¶ 2. Consequently, this suit is dismissed with prejudice.

17

Mot. ("Pl.'s Sanctions Mem.") at 5, ECF No. 89-1. The Ghana Defendants included lengthy excerpts from the emails in the background section of their Memorandum in Support of their Motion to Dismiss, relying on them to support the argument that Defendant Vanderpuije did not, in fact, accept any bribes in connection with the sewer contract. *See* Ghana Defs.' Mem. at 7–8.

The plaintiff moved to strike the emails and, "[a]fter Plaintiff presented . . . evidence that said emails were forged, Defendants' counsel failed to withdraw, sua sponte, Vanderpuije's Declaration and Exhibits, so on November 1, 2013, Plaintiff, pursuant to Fed. R. Civ. P. 11(c), served a Motion for Sanctions on Defendant Vanderpuije's counsels [sic]." Pl.'s Sanctions Mem. at 6. The plaintiff's evidence of forgery consisted of a conversation that the plaintiff's members had, including the Adjetey Defendants, in St. Louis, Missouri, on October 30, 2013. *See* Decl. of Elbert A. Walton, Jr., Vice-President/General Counsel, TJGEM LLC ("Walton Decl.") ¶¶19–25, ECF No. 105-1. During this conversation, the Adjetey Defendants allegedly admitted that Defendant Vanderpuije "requested that Vanderpuije be paid compensation for Vanderpuije awarding [the plaintiff] the Accra sewer system reconstruction project contract and that [Defendant] Gideon had documentary evidence thereof." Walton Decl. ¶¶ 19–20; Decl. of Anthony L. Weaver, President, TJGEM LLC ("Weaver Decl.") ¶ 23, ECF No. 105-2.[13] The defendants withdrew the challenged emails and all references to them on November 18, 2013, less than three weeks after the filing of the plaintiff's sanctions motion. *See* Not. of Withdrawal

---

[13] These declarations, along with the declaration of Ronald Pennington, an Information Technology expert who examined the emails and opined that the emails were forged, Decl. of Ronald Pennington, Sr. Technical Specialist, Wachovia/A.G. Edwards Technology Group, Inc. ("Pennington Decl.") ¶ 12, ECF No. 105-4, were filed in reply to the Ghana Defendants' opposition to the plaintiff's motion for sanctions. The plaintiff's initial motion contained no declarations or other factual support for its contentions regarding the authenticity or truthfulness of the emails. *See* Pl.'s Sanctions Mot., *generally*.

of Exs. Attached to Decl. of Alfred O. Vanderpuije and References Thereto ("Defs.' Withdrawal Not.") at 1, ECF No. 87.[14]

Federal Rule of Civil Procedure 11(c)(2) requires that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, *but it must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service . . .*" (emphasis added). Here, the plaintiff avers that it served the Ghana Defendants with the proposed Rule 11 motion on November 1, 2013, and the Ghana Defendants withdrew the challenged submissions on November 18, 2013. Pl.'s Sanctions Mem. at 6.

Consequently, the Ghana Defendants' actions fall within the safe harbor provision in Rule 11(c)(2). The plaintiff's Rule 11 motion was filed before the safe harbor period expired and after the documents had been withdrawn. *See* Pl.'s Sanctions Mot. (filed on November 20, 2013, i.e., twenty days after serving of motion on Ghana Defendants). Thus, the plaintiff's sanctions' motion is invalid.[15] "This procedural rule must be satisfied before the Court considers the substantive aspects of plaintiff's motion." *Brown v. FBI*, 873 F. Supp. 2d 388, 408 (D.D.C.

---

[14] Although the Ghana Defendants indicate that they withdrew the exhibits with the challenged emails, and all references to them, in order to avoid the "risk [of] distracting from the merits" of the Ghana Defendants' Motion to Dismiss, Ghana Defs.' Opp'n Pl.'s Sanctions Mot. at 8, ECF No. 100, the Court notes that the Ghana Defendants continue to buttress the authenticity of the emails through two declarations from the Adjetey Defendants. These declarations, which were submitted in opposition to the plaintiff's sanctions motion, merely state that "the text of the email is exactly as I sent it to Mayor Alfred Vanderpuije," Decl. of Gideon Adjetey ¶ 3, ECF No. 100-4, and "[t]he text of the email is exactly as I sent it to Gideon Adjetey and Jonathan Adjetey," Decl. of Mark Adjetey ¶ 3, ECF No. 100-5. As the plaintiff rightfully points out, these declarations may address the plaintiff's concerns about alleged forgery or authenticity of the emails, but plainly fall short of attesting to the truthfulness of the matters contained therein, namely, whether Defendant Vanderpuije solicited bribes. *See* Pl.'s Reply Ghana Defs.' Opp'n Pl.'s Sanctions Mot. at 8–10, ECF No. 105.

[15] The plaintiff appears to argue that, despite fully complying with Rule 11(c)(2), the defendants' counsel somehow committed a fraud upon the court and acted without good faith. *See* Pl.'s Reply Defs.' Opp'n Pl.'s Sanctions Mot. at 17–19, ECF No. 105. In support of this contention, the plaintiff cites *Breezevale Ltd. v. Dickinson*, 879 A.2d 957 (D.C. 2005), which is both factually and legally inapposite. In that case, a jury considering a legal malpractice claim found that certain documents, which formed the basis of the claim, were forged, thus negating the plaintiff's grounds for relief. *Breezevale Ltd.*, 879 A.2d at 960. Rule 11 was neither discussed nor invoked in that case.

2012). Since the plaintiff failed to comply with Rule 11(c)(2),[16] the motion for sanctions is denied.[17]

## IV. CONCLUSION

In its memorandum supporting its motion for sanctions, the plaintiff confidently announces that it "is but a matter of time as the Plaintiff engages in Discovery in its march to a judgment for Plaintiff for $317,426,250.00, including punitive damages!" Pl.'s Sanctions Mem. at 3. For the aforementioned reasons, that march ends today. The Ghana Defendants' Motion to Dismiss, ECF No. 51, is granted and this matter is dismissed as to all defendants. Consequently, all remaining motions are denied as moot, except for the plaintiff's motions to strike the Ghana Defendants' declarations and for sanctions, which are both denied.

An appropriate Order accompanies this Memorandum Opinion.

Date: December 31, 2013

_____
BERYL A. HOWELL
United States District Judge

---

[16] The plaintiff urges the Court to sanction defense counsel under 28 U.S.C. § 1927, Pl.'s Sanctions Mem. at 9–10, which applies "only when the attorney acts in *subjective bad faith*." *Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 45, n.9 (D.C. Cir. 1990) (emphasis in original). The plaintiff has, as the Ghana Defendants point out, "provided nothing but argumentation and innuendo" to show defense counsel has acted in subjective bad faith. Ghana Defs.' Opp'n Pl.'s Sanctions Mot. at 20, ECF No. 100. Section 1927 sanctions are therefore unwarranted.

[17] The Ghana Defendants' request for attorneys' fees as a prevailing party under Rule 11(c)(2) is denied because, as the Ghana Defendants point out, Rule 11 sanctions are an extreme punishment for filing pleadings that frustrate the judicial process. *Brown*, 873 F. Supp. 2d at 408 (citation omitted); Ghana Defs.' Opp'n Pl.'s Sanctions Mot. at 12. The Court is not convinced that the plaintiff acted in bad faith or improperly in seeking withdrawal of the subject e-mails in light of the substantial questions raised about their reliability and the truthfulness of their contents.